No. 34,187

FREUHAUF TRAILER COMPANY, *Appellee,* v. THE STATE CORPORATION COMMISSION; ERNEST BLINCOE, HOMER HOCH and E. R. SLOAN, Members of said Commission; and J. C. STANDLEY, Sheriff of Finney County, *Appellants.*

(87 P. 2d 641)

Opinion filed March 4, 1939.

*Innis D. Harris* and *John F. Jones,* both of Topeka, for the appellants.

*Thomas F. Doran, Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *Robert E. Russell,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: Plaintiff brought this action to enjoin the state corporation commission and other public officials from enforcing the provisions of the motor-carrier act which impose gross-ton-mileage taxes on truck and trailer equipment used on the public highways engaged in the business of intrastate trucking subject to statutory regulations. In substance, these regulations provide that there shall be assessed against every public, private, and contract carrier a gross-ton-mileage tax to be computed pursuant to a prescribed formula. (G. S. 1935, 66-1,120.)

Each carrier is required to make a specified deposit of cash with the defendant commission for each vehicle of three tons or less operated by him, and a graduated increase of such deposit for each vehicle of greater capacity. Out of this deposit the ton-mileage tax is taken, and the law contemplates that monthly remittances are to be forwarded to the commission by each carrier in sufficient amounts to meet his monthly ton-mileage dues properly chargeable thereto. . (G. S. 1935, 66-1,120a.) The statute also contemplates that summaries of the truck operator's daily ton-mileage shall be reported to the commission (G. S. 1935, 66-1,120b; Id., 66-1,122); and any requisite payments for such ton-mileage taxes (indifferently and occasionally called fees throughout the statute) must be made on or before the 15th day of each month. (G. S. 1935, 66-1,124.) The text of the last cited paragraph, in part, reads:

"On or before the 15th day of each month all motor carriers shall pay to the commission on the amount of the fees due from them for the preceding month. If payment is not made on or before said date there shall be added as a penalty a sum equal to one and one-half percent per month of the amount of the original fee. *Said fees and penalties not paid* on said date *shall constitute a lien upon all the personal property of the delinquent carrier, and also upon the vehicles of all persons leased by it in its business, and thereupon said property and vehicles may be held under warrant issued by the commission and may be sold in accordance with the law applicable to personal property taxes. . . .* The commission shall enforce collection of all fees and

penalties provided in this act." (Laws 1935, ch. 242, § 1; G. S. 1935, 66-1,124.) [Our italics.]

G. S. 1935, 66-1,129, further provides:

"The commission shall promulgate and publish in the official state paper, and mail to each holder of a certificate or license hereunder, such regulations as it may deem necessary to properly carry out the provisions and purposes of this act."

The plaintiff predicated its cause of action upon undisputed facts, which may be summarized thus:

In 1937 Kenneth Murray, of Pawnee county, was a contract motor carrier operating various trucks and semitrailers (four in number) under permits issued by the state corporation commission. On March 17, 1937, he became delinquent in the payment of the requisite ton-mileage charges due from him on account of the operation of his four trucks and semitrailers in the aggregate amount of $1,013.58. To enforce collection thereof the commission caused a warrant to be issued and directed to the sheriff of Finney county to levy on certain motor vehicles used by Kenneth Murray under his permit.

The sheriff levied on one of the semitrailers, numbered thus: Model No. 06DF, serial No. G-39393.

To enjoin the subjection of that property to the payment of the amount due, this action was begun by the plaintiff, Freuhauf Trailer Company, alleging that the semitrailer seized by the sheriff was one which, on May 28, 1936, it had delivered to Murray on terms of a "conditional sales agreement" (exhibit A) whereby the title to the property should remain in plaintiff until it had been fully paid for. This agreement also provided that plaintiff should have the right to repossession of the semitrailer until it was paid for in full. The fifth paragraph of the agreement, in part, read:

"*Fifth*: It is understood and agreed that in case of default on the part of the second party [Murray] to make any of the payments of principal or interest when due . . . or in the event of the failure of second party to perform any other agreement on the part of said party to be performed, then the first party [Freuhauf Trailer Company] . . . may with or without legal process and using such force as may be necessary . . . take possession thereof and thereafter hold the same absolutely free from all claim of second party *and retain all payments made by second party hereunder as and for the reasonable rental of said property and for the use, wear and tear thereof.*" (Our italics.)

Plaintiff alleged that Murray still owed it the sum of $2,032 on the semitrailer in controversy at the time the sheriff seized it on the state corporation commission's tax warrant.

Plaintiff's petition narrated the pertinent details touching similar agreements with Murray whereby three other semitrailers had been delivered to him, none of which had been fully paid for by Murray; and on each of which plaintiff had and claimed the same rights as on the one seized by the sheriff, and that plaintiff had exercised its right of repossession.

In the same petition plaintiff also alleged that one Charles E. Aziere of Anderson county was engaged in the same sort of business as Murray, and that plaintiff had delivered to Aziere one of its semitrailers on terms similar to those of its "conditional sales contract" with Murray; that Aziere had not completed his payments of the purchase price, and that he, like Murray, had become delinquent in his monthly ton-mileage dues to the state corporation commission to the extent of $1,865.91; and that the commission was about to seize, attach and dispose of the Aziere semitrailer to enforce collection of the amount of his delinquency.

Defendant's demurrer to this petition was overruled, and it answered, setting up its own version of the facts, which did not materially vary from the allegations of plaintiff's petition. To further expedite the hearing the litigants submitted an agreed statement of facts, showing that the delinquent ton-mileage dues on the four semitrailers operated by Murray and on which plaintiff held conditional sales contracts, separately computed, were as follows (omitting penalties):

```
"Serial No. G-39393................................... $214.39
 Serial No. G-38843...................................  201.57
 Serial No. F-36656...................................  228.51
 Serial No. 38845....................................  203.66"
```

Among other stipulations of fact was the following:

"That plaintiff knew, at the time the contracts, exhibit 'A' and others identical except for description, were executed, that the trailers described therein would be operated on the public highways of the state of Kansas, and was charged with knowledge of the provisions of section 66-1,120, G. S. 1935, and section 66-1,124, G. S. 1935."

It was also agreed that after the levy by the sheriff, all the other semitrailers which Murray and Aziere had acquired from plaintiff had been repossessed and removed from the state; that neither

Murray nor Aziere had any other property out of which the commission's warrants for overdue and delinquent ton-mileage dues could be collected; and that if any of the semitrailers operated by Murray or Aziere, and on which ton-mileage dues had been properly charged but not paid, should be brought back into the state, the commission would subject them to the satisfaction of its tax warrants.

Both parties moved for judgment on the pleadings and agreed facts. The trial court made extended findings of fact, upon which it made the following conclusions of law:

"I. The court finds that under the conditional sales contracts, attached as exhibits to the petition, the title to the trailers in question remained in the plaintiff herein, the Freuhauf Trailer Company, and said trailers were not the property of Kenneth Murray and Charles E. Aziere, and that no lien for ton-mileage taxes provided in section 66-1,120a, General Statutes of Kansas, 1935, attached under the provisions of section 66-1,124, General Statutes of Kansas, 1935.

"II. That the defendant, the state corporation commission, without lawful authority, caused a warrant to issue to the sheriff of Finney county, Kansas, against semitrailer, serial No. 39393, model 06DF; that said warrant, insofar as it attempted to cover property, title to which is retained by plaintiff herein under conditional sales contracts, was void and of no effect.

"III. That the sheriff of Finney county, Kansas, J. C. Standley, wrongfully and unlawfully seized said semitrailer, serial No. 39393, model 06DF.

"IV. That the defendant, the state corporation commission, without lawful authority, is threatening to issue tax warrants and attach other property of the plaintiff herein held under conditional sales contracts similar to those introduced in evidence herein.

"V. That section 66-1,124, General Statutes of Kansas, 1935, does not, by its terms, create a first and prior lien, even on property owned by a licensed motor carrier, and that any lien created by said statute would be inferior to any lien created by conditional sales contract or chattel mortgage, provided same had been regularly recorded in the manner provided by law."

Judgment was accordingly entered for plaintiff, enjoining defendants and each of them from attempting to enforce any lien on any of the described semitrailers used by Murray or Aziere in their trucking operations, as to which plaintiff claimed ownership and right of repossession by virtue of its conditional sales contracts.

Hence this appeal.

Defendants stand on the letter of the statute which declares that all the personal property of the carrier, and particularly all the motor vehicles used by him as a carrier, whether owned or leased

by him, are subject to a lien for the payment of the statutory ton-mileage fees and penalties.

Counsel for plaintiff contend that the particular semitrailer seized by the sheriff was not the property of Kenneth Murray, but of plaintiff, and that it was not liable to the lien sought to be enforced against it. In support of that contention authorities from other states are cited, to which we will later refer. But first let us critically examine our statute. It is not only all the personal property of the delinquent carrier which is subject to the statutory lien for the satisfaction of the ton-mileage fees and penalties, but also upon the vehicles leased by the carrier and used in his business of motor carriage. If for the nonce we should concede that Murray had no semblance of ownership of the semitrailer seized by the sheriff, which plaintiff had delivered to Murray on the terms of its conditional sales contract, there was another provision in that contract whose significance cannot be ignored. That provision is that if or when the "conditional sales" purchaser Murray fails to make any of the prescribed purchase-money payments as they become due, or otherwise fails to perform his part of the conditional sales contract, plaintiff may take possession of the semitrailer and hold it free from any claim of Murray, and may retain all payments made by him *"as and for the reasonable rental of said property and for the use, wear and tear thereof."*

And so, if no semblance of ownership of the seized semitrailer vested in Murray by virtue of the contract and by the delivery of it to him, the relationship of plaintiff and Murray concerning the property was in effect that of lessor and lessee, according to rental terms of the contract. The statute imposes a lien for the ton-mileage fees and penalties due from the carrier on the motor vehicles leased and used by the carrier on the Kansas highways.

It is neither denied nor deniable that at the time the semitrailer was delivered to Murray plaintiff knew that Murray intended to use it in his motor carrying business in this state, and it must be held to have known that such use of it on Kansas highways would automatically subject it to a lien for the payment of the ton-mileage dues incurred in its operation.

Recurring, however, to the question of ownership of property which has been the subject of a conditional sales contract, we derive some help from the analogous case of *Plow Co. v. Rodgers,* 53 Kan. 743, 37 Pac. 111. In that case there was a contract between

the Moline Plow Company and Underwood, a local implement dealer. The plow company delivered to him certain agricultural implements under a contract which provided that whatever of these articles Underwood did not sell should be stored by him "free of charge, as the Moline Plow Company's property." This court held that the transaction was a sale which passed to Underwood a title in the first instance, subject only to its being defeated by the actual election of the plow company to retake it as its own. A lawsuit was precipitated by the sheriff's seizure of the implements under a writ of attachment at the instance of other creditors. The plow company sought to override the attachment by force of the terms of its contract with Underwood. But this court held otherwise. The pertinent syllabus reads:

"A vendor who sells and delivers goods at prices and on terms of payment definitely fixed by the contract, but retains the right to elect to take the goods remaining unsold by his vendee as the property of the vendor, is not the owner of the goods until after the actual exercise of such election, and creditors of the vendee who attach such goods prior to any election by the vendor acquire a valid lien thereon." (Syl. ¶ 1.)

In the court's opinion, Mr. Justice Stephen H. Allen said:

"Until the Moline Plow Company exercised its option to recover the goods as its own property, we think the title was in Underwood. There is no pretense that this option was exercised prior to the attachment of the goods by the defendant, and the levy on them as the property of Underwood was therefore valid." (p. 747.)

For many years we have had a statute which recognizes the validity of conditional sales contracts, and which provides for their filing for record (G. S. 1935, 58-314), but among the many times it has been the subject of comment, we glean nothing helpful to a correct determination of our present problem unless it be in *Christie v. Scott*, 77 Kan. 257, 260-261, 94 Pac. 214, where Mr. Justice Clark A. Smith said that a conditional sales contract under Kansas law should be regarded as on the same basis as a chattel mortgage. In *Automobile Co. v. Dennis*, 104 Kan. 241, 244, 178 Pac. 408, the similarity between conditional sales contracts and chattel mortgages in this state was remarked as a truism in no need of elaboration.

In the earlier case of *Hall v. Draper*, 20 Kan. 137, Mr. Justice Brewer said that a conditional sales contract differed in certain respects from an absolute sale and a chattel mortgage back. That decision, however, was rendered in 1878, before the enactment of our statute dealing with conditional sales, whereas *Christie v. Scott*,

supra, was decided subsequent to that enactment, a matter unnoticed in *Bailey v. Baker Ice Machine Co.*, 239 U. S. 268, where both these decisions were the subject of scrutiny.

In *Automobile Co. v. Dennis*, 104 Kan. 241, 178 Pac. 408, a question of priority of liens arose over an automobile which had been the subject of a conditional sales contract. The automobile was partly wrecked in a highway accident and left at a garage to be repaired. The garage mechanic held it as security for his repair bill under authority of the statute which accorded him a lien on the automobile for the reasonable value of his materials and services thereon. (Gen. Stat. 1915, § 6082; G. S. 1935, 58-201.) The plaintiff automobile company claimed a prior right to the automobile by virtue of the terms of its conditional sales contract, but this court held that the mechanic's statutory lien was superior to the contract lien, notwithstanding the latter was prior in time. In the opinion, Mr. Justice Marshall cited the predominant force of an agister's lien over a previously executed chattel mortgage. The soundness of these rulings can scarcely be gainsaid. True, such liens are given precedence by the express language of the statute; but the state's right of precedence for the enforcement of its lien for its ton-mileage fees for the privilege of using its highways for the operation of these monstrous semitrailers is just as obvious and essentially just as the agister's and the mechanic's claim to precedence of their liens. When a chattel mortgage on cattle is executed the mortgagee knows the cattle must be pastured at somebody's expense, so it is altogether just that a lien of equitable precedence over his will arise in favor of the man who pastures the cattle. So, too, the conditional sales vendor of an automobile knows that notwithstanding the recitals of his contract the mechanic who preserves the usefulness of the subject matter of that contract by repairs and services to it is morally and equitably entitled to an overriding lien for the payment of his bill. It is no departure from the same course of reasoning to hold that when the plaintiff delivered this semitrailer to Murray it knew that it was to be used on the highways of this state in Murray's business as a carrier, and that for every ton of freight carried by that vehicle over a mile of public road in this state a ton-mileage tax would automatically come into existence, for the satisfaction of which a statutory lien would attach to that vehicle (as well as to all the other property mentioned in the statute), and that unless that ton-mileage charge was other-

wise promptly paid the vehicle itself would be seized by state authority to enforce payment.

We think that where the state has imposed a lawful ton-mileage charge for the privilege of using its highways by licensed carriers it is not possible for the vendor of a motor-carrying vehicle and the user of such vehicle to devise a contract whereby such vehicle can be used in the business of motor carriage on Kansas highways and yet be exempt from the lien which the statute imposes. The conditional sales contract under which plaintiff claims has not accomplished that result. The court holds that the state's lien for its ton-mileage dues takes precedence over the plaintiff's contract lien by clear and necessary implication.

Such is the conclusion we have reached in this case; and it matters not whether the carrier's interest in the semitrailer seized by the sheriff be regarded as one of special ownership subject to plaintiff's legal title thereto (as in *Plow Co. v. Rodgers,* supra) or merely as lessee under the rental conditions of that contract.

We have purposely refrained from designating the statute governing this controversy as an exercise of the police power as distinguished from the taxing power. Lawyers and judges often get themselves into difficulties by taking the law apart and classifying it in categories and stowing its parts in artificial pigeonholes. In *State v. Caplan,* 100 Vt. 140, 135 Atl. 705, the Vermont supreme court rendered an exhaustive opinion on the subject of ton-mileage taxes and motor vehicles using the public highways in carriage for hire. In concluding that opinion it said:

"It may be true that in some of the foregoing cases the right under discussion is assigned to the police power rather than to the taxing power. But in our view this makes no difference in the result. You may call the charge imposed a 'fee,' or you may call it a 'tax'; you may call the enactment imposing it a 'police measure' or you may call it a 'revenue measure'; it makes no difference. The validity of the act in the respects here called in question is established." (p. 158.)

In the instant case we think it sufficient to say that the statute which imposed these ton-mileage fees and penalties on the vehicle in controversy is a valid exercise of legislative power, and as such it is to be enforced and obeyed.

We have not failed to examine carefully the cases cited by counsel for plaintiff. We take no exception to the general doctrine of the textbooks and cyclopedias which hold that taxes are not a lien on property unless expressly made so by statute or by necessary im-

plication, nor to the doctrine that among ordinary rival lien claimants the one first in time is first in right. We think the state's lien claim is precedent to the plaintiff's because it is a statutory lien, while plaintiff's is merely a contract lien which must conform to the state's declared public policy or it would be altogether invalid. And public policy will not give countenance to any construction of a contract between private individuals which would have the effect of vitiating a statute or setting at naught the state's declared policy of imposing ton-mileage dues on all motor vehicles using its highways by carriers for hire.

Two of the cases from other jurisdictions cited by plaintiff's counsel which treat of conditional sales contracts and the rights of parties thereto are: *Malden Center Garage, Inc., v. Berkowitz,* 269 Mass. 303, 168 N. E. 916; and *Truitt v. Patten,* 75 Utah 567, 287 Pac. 175. Neither of these has any helpful bearing on the relative potency of the state's lien for its ton-mileage fees and penalties and a vendor's contract lien on the property concerned.

We must admit that the next three cases cited by plaintiff are largely at odds with the conclusion we feel impelled to reach. In *Universal Credit Co. v. Mamminga,* 214 Ia. 1135, 243 N. W. 513, it was held that a motor truck which had been purchased under an ordinary conditional sales contract was not subject to levy for the payment of highway privilege taxes due the state *after the vendor had repossessed it* for default in payment of the purchase price. This case seems to leave open the question of the relative precedence of the liens of the state and the vendor if the levy had been made before the chattel was repossessed. In *Pacific Finance Corp. v. Snohomish County,* 160 Wash. 384, 295 Pac. 110, it was held that the county's distraint and seizure of an automobile sold under a conditional sales contract to enforce collection of the *ordinary* taxes assessed against it was inferior to the right of the vendor to declare a forfeiture of the contract of sale and to repossess the automobile for default in payment of the purchase price. As to this case we shall only take space to say that the tax laws of that state are fundamentally different from ours.

Yet another case cited by plaintiff must be noticed. It is *Roachell v. Gates,* 185 Ark. 350, 47 S. W. 2d 35, which holds that ton-mileage taxes imposed on motor carriers for the use of the highways as a business, in proportion to their mileage traveled within the state, is constitutional. However, we can find only one scant morsel

of support to our view in the same case where the court held that the vendee of a motor truck who acquired it on the terms of a conditional sales contract, and who has partially paid the purchase price, has an interest in the property which is subject to execution for the collection of the privilege tax imposed on motor carriers. (See, also, *Nevada Motor Co. v. Bream*, 51 Nev. 89, 269 Pac. 602, 61 A. L. R. 776.)

None of these cited cases mentions the cardinal principle of statutory interpretation which has always been observed in our own decisions. That principle is that in the construction of statutes involving the state's prerogative rights, it is the court's duty to give them an interpretation which will enable our state government to function, to make its statutes work effectively, as the legislature intended; and to avoid an interpretation which would defeat the legislative intention—if that can be done without doing violence to the language of the statute.

In our examination of these authorities we have noted some others which, although not presenting questions strictly analogous to the one at bar, are indicative of a tendency to see that the public treasury is not deprived of its due by reason of contractual arrangements of private parties concerning their respective rights in property. Thus, in *White Co. v. Hammond Stage Lines*, 180 La. 962, 158 So. 353, it was held that a city's lien on motor buses operating on its streets for its license taxes took precedence over an earlier chattel mortgage on those vehicles. In *Weber Showcase, etc., Co. v. Kaufman*, 45 Ariz. 397, 44 P. 2d 158, it was held that personal ad valorem taxes on the equipment of a soda fountain took precedence over the interest of appellant whose rights in the property, which included retention of title, were defined by the parties to a conditional sales contract. So, too, in *RCA Photophone, Inc., v. Huffman*, 5 Cal. App. 2d 401, 42 P. 2d 1059, it was held that certain chattel equipment leased by its owner and installed in a theater was properly assessed to the lessee as a qualified owner of the equipment. The opinion is instructive, but we can only take space to quote:

"We cannot overlook the far-reaching effect which the answer to this question must necessarily have on the collection of taxes on personal property in this state. There are many thousands of articles of personal property sold each year on conditional sales contracts and many more thousands held by nonowners under leases. They range all the way from articles of home furnishing of relatively small value to property of very considerable worth. To require the assessors to ferret out the legal owner of each of these pieces of

personal property would place upon them a task almost impossible of fulfill-ment. To hold that the tax on personal property lawfully assessed to its pos-sessor could not be collected by its seizure and sale would surely result in the escape from taxation by many, as no other adequately workable means for collecting these taxes is given by the law. We should not reach such a result unless there is open no avenue of escape from it, as it is the fundamental law in California that the burden of the support of government shall be equally spread and that 'all property in the state except as otherwise in this constitu-tion provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as herein-after provided.'

"In approaching this problem we are well aware of one useful definition of the owner of property as 'one who has dominion of a thing, real or personal, corporeal or incorporeal, which he has the right to enjoy and do with as he pleases—either to spoil or destroy it as far as the law permits—unless he be prevented by some agreement or covenant which restrains his right.' (6 Words & Phrases, 1st Series, 5135, and cases cited.)

"A broader interpretation of the term 'owner' [has been] given by this court. . . . 'The terms "owning," "owner," "owned," depend somewhat for their signification upon the connection in which they are used. They are not tech-nical, but general terms, and are, therefore, literally construed, "the precise meaning depending upon the nature of the subject matter and the connection in which" they are used.'

"We therefore conclude that the term 'owner' may include others than the possessor of the legal title to property and is often used to designate persons in legal possession. From this premise and the fact that it would have been a futile act on the part of the legislature to empower the assessor to assess per-sonal property to its lawful possessor and provide no efficiently workable means of collecting the tax computed on such assessment after it was legally made." (pp. 404, 406, 407.)

We conclude, therefore, that it is immaterial whether Murray be regarded as the qualified owner of the semitrailer seized by the sheriff or merely the lessee of it under the alternative terms of the conditional sales contract, the vehicle was properly subject to the lien imposed by the statute, and that such lien had precedence over the lien conferred on plaintiff by the terms of the agreement between itself and its vendee.

The propriety of giving the statute an interpretation which would limit the state's lien to an amount of fees and penalties computed according to the prescribed formula predicated on the ton-mileage of the one semitrailer seized by the sheriff has been considered. But· a majority of this court decline to assent to a decision based on that view, and hold that the corporation commission's warrant was properly issued for the total amount of Murray's delinquent

ton-mileage fees and penalties. So, too, the commission's warrant will reach all of Aziere's personal property and all the trucks used by him in his motor-carrier business, irrespective of the contract liens created between him and plaintiff for their own purpose. It follows that the judgment of the district court must therefore be reversed and the cause remanded with instructions to enter judgment in favor of defendants. It is so ordered.

WEDELL, J., concurs in the result.

DAWSON, C. J. (*dubitante*): I concur in all that is said in the opinion except on the point whether the vehicle seized by the sheriff was properly subjected to all of Murray's delinquent ton-mileage dues and penalties. I am inclined to think it was only subject to a lien for the amount due, based on the number of tons and miles it had been used on the highways of this state in Murray's business as a carrier.

HOCH, J., not sitting.