The Central Kansas Power Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 106539.    Promulgated March 26, 1942.

*Ellis D. Bever, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

HILL: The Commissioner has determined income tax deficiencies of $1,678.78 and $958.52 for the calendar years 1938 and 1939, respectively. Several adjustments made by the Commissioner are not in question. The only issues presented by the petitioner are the disallowance of dividends paid credit under section 27 (a) (4), Revenue Act of 1938 and I. R. C.[1]

The facts were stipulated and are hereby adopted as our findings of fact. Only those facts necessary to an understanding of the issues will be set forth.

Petitioner is a corporation which filed its income tax returns for the taxable years 1938 and 1939 with the collector of internal revenue for the district of Kansas.

In April 1937 petitioner entered into two contracts with the Westinghouse Electric & Manufacturing Co., hereinafter sometimes referred to as Westinghouse, for the manufacture and the installation of certain equipment. The following provisions were common to both contracts:

3. The title to the apparatus herein specified, and any replacements thereof or substitutions therefor, shall not pass from the Company until all payments due hereunder (including deferred payments and payments of notes and renewals thereof if any) shall have been fully made in cash, and the apparatus specified shall remain personal property whatever may be the mode of its attachment to the realty or other property, until fully paid for in cash, and the Purchaser agrees to perform all acts which may be necessary to perfect and assure retention of title to the said apparatus in the Company. The Purchaser shall assume all risk of loss after the apparatus is delivered as specified herein. If default is made in any of the payments, in the manner and form and at the time herein specified, the Company shall be entitled to the immediate possession of said apparatus and shall be free to enter the premises where such apparatus may be located and remove the same as its property, without prejudice to any further damages which the Company may suffer by reason of the Purchaser's refusal or failure to surrender the apparatus when so required. In case notes or trade acceptances are accepted, they shall be mere evidence of indebtedness and not payment and if any one is not paid when due, all outstanding notes shall, at the option of the holder, become immediately due and payable; all collection and exchange charges and all taxes shall be payable by the Purchaser.

4. Price Seventy-nine Thousand One Hundred Forty-five and no/100 Dollars, ($79,145.00).

---

[1] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

(a) DEFINITION IN GENERAL.—As used in this chapter with respect to any taxable year the term "dividends paid credit" means the sum of:

\* \* \* \* \*

(4) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind, if such amounts are reasonable with respect to the size and terms of such indebtedness. As used in this paragraph the term "indebtedness" means only an indebtedness of the corporation existing at the close of business on December 31, 1937, and evidenced by a bond, note, debenture, certificate of indebtedness, mortgage or deed of trust, issued by the corporation and in existence at the close of business on December 31, 1937, \* \* \*

Payable in United States currency.

An extra charge will be made for special containers (such as oil barrels, reels, etc.), but refund will be made if returned in good condition to the factory, or other point designated by the Company, within four (4) months from date of original shipment, charges prepaid.

5. TERMS OF PAYMENT:

    50 per cent on presentation of Bill of Lading.

    40 per cent 30 days from date of Bill of Lading.

    10 per cent 60 days from date of Bill of Lading.

\*      \*      \*      \*      \*      \*      \*

Subsequently the terms of payment were modified by agreement between the petitioner and Westinghouse.

On December 24, 1937, the two contracts were recorded by the vendor in the Office of the Registrar of Deeds of Ellis County, Kansas, the county into which the equipment was to be shipped. The dates and amounts of the invoices and the dates of the bills of lading and the shipment of the equipment covered by the two contracts are as follows:

| Date of invoice | Date of B/L and date shipped | Amount of invoice |
|---|---|---|
| 12–21–37 | 12–20–37 | $27, 468 |
| 12–21–37 | 12–30–37 | 25, 885 |
| 12–21–37 | 12–31–37 | 55, 202 |
| Total | | 108, 555 |

The equipment arrived at its destination in Hays, Ellis County, Kansas, after January 1, 1938, and the above total amount of $108,555 was entered as a liability on petitioner's books in January 1938, under accounts payable in the sum of $68,555 and notes payable in the sum of $40,000.

The petitioner paid its principal indebtedness, totaling $108,555, to Westinghouse under the contracts as follows:

*1938*

| | | | |
|---|---|---|---|
| 1/7/38 check | | $18, 352 | |
| Checks for $3,800 each month | | 45, 600 | |
| | | | 63, 952 |

*1939*

Payment on note given 1/3/38:

| | | | | |
|---|---|---|---|---|
| February, check | $3, 000 | | | |
| March through August check for $3,800 each month | 22, 800 | | | |
| September, check | 14, 200 | | | |
| | | $40, 000 | | |
| January check | 3, 800 | | | |
| February check | 803 | 4, 603 | 44, 603 | |

| | |
|---|---|
| Total | 108, 555 |

On the basis of these facts petitioner contends that it should be allowed a dividends paid credit under section 27 (a) (4), *supra*, in

the amount which it actually paid to Westinghouse. Petitioner's position is that even though the contracts were conditional sales contracts they were in effect chattel mortgages under the law of Kansas and, therefore, the debts owed to Westinghouse are indebtedness within the meaning of that section.

Respondent's position is that section 27 (a) (4) is a credit provision and must be strictly construed, and that, so construed, the contracts between petitioner and Westinghouse could not be denominated mortgages within the meaning of section 27 (a) (4).

We agree that the statute under consideration provides for a credit and thus must be strictly construed. Cf. *Kolor-Thru Corporation*, 44 B. T. A. 1303. However, in so construing this provision we must give the words used their ordinary meaning unless there is some reason to show a contrary intent of Congress. *Old Colony Trust Co.* v. *Commissioner*, 301 U. S. 379.

It will be necessary to see whether the contract in this case comes within the ordinary meaning of the word "mortgage." A mortgage is defined as "an estate created by a conveyance absolute in its form, but intended to secure the performance of some act, such as the payment of money, and the like, by the grantor or some other person, and to become void if the act is performed agreeably to the terms prescribed at the time of making such conveyance." Black's Law Dictionary, 3d ed.; similarly defined in Webster's International Dictionary.

There is no name attached to these contracts but title is retained by the vendor. Retention of title is an incidence of a conditional sale. However, a mortgage and a conditional sale have much in common and it is often difficult to determine whether a given transaction is a conditional sale or a chattel mortgage. "It is fundamental that a mortgage shall secure a debt; there must be an absolute obligation to pay." Williston on Sales, vol. 1, p. 783. From the instruments and the law of Kansas which interprets the rights of the parties thereunder, we must determine the nature of the instruments.

The Supreme Court of Kansas has consistently construed conditional sales contracts as in effect chattel mortgages. *Christie* v. *Scott*, 77 Kan. 257; 94 Pac. 214; *International Harvester Co.* v. *Champlin Refining Co.*, 153 Kan. 414; 110 Pac. (2d) 779. Cf. *State* v. *Webb*, 105 Kan. 407; 184 Pac. 715. But in *Bailey* v. *Baker Ice Machine Co.*, 239 U. S. 268, the United States Supreme Court held the contract there under consideration was a conditional sale rather than an absolute sale with a chattel mortgage back. The Court said that the *Christie* case did not overrule or qualify prior Kansas cases which distinguished a conditional sale and a chattel mortgage.

But compare *Fruehauf Trailer Co.* v. *State Corporation Commission*, 149 Kan. 465; 87 Pac. (2d) 641. However, in the *Baker Ice Machine* case, the Supreme Court stated that the intention of the parties as drawn from the whole instrument was controlling and it affirmed the finding of a lower court that the intention of the parties was to execute a conditional sale rather than a chattel mortgage.

In the instant case it appears to us to be the intention of the parties to make an absolute sale of the property, but that there be a lien against the property for the unpaid purchase price. There is no provision in these contracts which provides for a rental in case there was a default as there was in the *Baker Ice Machine* case. The whole tenor of the contracts under consideration is that of an absolute sale. This is evidenced by the fact that the apparatus was for this petitioner's specific purpose. The obligation to pay is stated absolutely and not conditionally. Thus, it seems to us that the retention of title was solely for security purposes. This is more in accordance with an absolute sale with a chattel mortgage given by the vendee to the vendor than with a conditional sale.

Respondent contends that a conditional sales contract is different from a chattel mortgage in that the purchaser never gets title, whereas in a mortgage given as security title is transferred to the mortgagee. However, in a situation where a mortgage is given as security for the purchase price, the title may rest in the purchaser for just an instant before transfer back to the vendor as security. This appears to us to be a distinction without a difference. Therefore, since we have construed the intent of the parties in the instant case was that title was retained for the purpose of security, and since the law of Kansas treats a conditional sale as in effect a chattel mortgage, we hold that payments on the contracts with Westinghouse were payments on "indebtedness" within the meaning of section 27 (a) (4). The note given January 3, 1938, was a renewal of indebtedness within the meaning of section 27 (a) (4), I. R. C.[2] and payments on it give rise to a dividends paid credit.

The other issue involved in this proceeding is whether payments on promissory notes given in prior years in satisfaction of dividends come within the meaning of section 27 (a) (4). The facts as to this issue were stipulated as follows:

7. During the calendar years 1936 and 1937, the petitioner issued certain of its own promissory notes in payment of dividends on its common stock. Such notes had an actual value at the time of issuance equal to their face value. The petitioner claimed and was allowed a dividends paid credit of the entire face amount of such notes in computing its surtax liability on undistributed profits for the years 1936 and 1937, respectively.

[2] (4) * * * A renewal (however evidenced) of an indebtedness shall be considered an indebtedness.

8. At December 31, 1937, certain of the notes mentioned in paragraph 7 above were outstanding and constituted indebtedness of the petitioner in existence at the close of business on December 31, 1937. During the calendar year 1938 the petitioner paid $6,550.00 on the principal amount of said notes, and during the calendar year 1939 paid $2,250.00 on the principal amount of said notes.

The identical issue was before the Board in *Spokane Dry Goods Co.*, 43 B. T. A. 793; affd., 125 Fed. (2d) 865, and was decided adversely to the position of the petitioner. Upon the authority of that case, we must sustain the determination of the respondent in disallowing a dividends paid credit for the payments on the notes.

*Decision will be entered under Rule 50.*