# TRAVELLERS' INSURANCE COMPANY v. CONNECTICUT.

## ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE OF CONNECTICUT.

No. 219.    Argued April 14, 15, 1902.—Decided May 5, 1902.

The legislation of the State of Connecticut, in respect to the taxation of shares of stock in a local corporation, held by non-residents, which is set forth in the statement of facts, is not in conflict with paragraph 1 of section 2 of article IV of the Federal Constitution, or the Fourteenth Amendment to that Constitution.

SECTION 2 of chap. 153 of the Public Acts of Connecticut, passed in 1897, reads as follows:

" The cashier or secretary of each corporation whose stock is liable to taxation, and not otherwise taxed by the provisions of this title, shall, on the first day of October, annually, or within ten days thereafter, deliver to the comptroller as worn list of all its stockholders residing without this State on said day, and the number and market value of the shares of stock therein then belonging to each; and shall on or before the twentieth day of October, annually, pay to the State one and one half per centum of such value; and if any such cashier or secretary shall neglect to comply with the provisions of this section he shall forfeit to the State one hundred dollars, in addition to said one and one half per centum so required to be paid."

This method of assessment and taxation of non-resident stockholders in insurance corporations has been in force in Connecticut since 1866, although at first the rate of tax was only one per cent.    Public Acts, 1866, chap. 29.

By section 1 of chap. 50 of the Public Acts of 1899, it is provided :

" Section 1923 of the General Statutes is hereby amended to read as follows: When not otherwise provided in its charter, the stock of every corporation shall be personal property, and be transferred only on its books, in such form as the directors

shall prescribe; and such corporation shall at all times have a lien upon all the stock owned by any person therein, for all debts due to it from him; and any corporation desiring to enforce such lien may give notice to such stockholder, his executor or administrator, and if there be none, his heir-at-law, that unless he shall pay his indebtedness to said corporation within three months it will sell said stock; and such corporation may prescribe by its by-laws the manner of giving notice required by this section, but the notice of sale shall in no case be given until the liability has become fixed."

The original section in the General Statutes, enacted in 1888, is precisely the same as the first half of the amended section, and secured to the corporation a lien upon the stock for debts due to it by the stockholder, the amendment consisting in the addition of the last half, which provides the method of enforcing such lien.

Section 3836 of the General Statutes, as amended by chap. 63 of the Public Acts of 1889, reads:

" SEC. 3836. Shares of the capital stock of any bank, national banking association, trust, insurance, turnpike, bridge or plank road company, owned by any resident of this State, shall be set in his list at its market value in the town in which he may reside; but so much of the capital of any such company as may be invested in real estate, on which it is assessed and pays a tax, shall be deducted from the market value of its stock, in its returns to the assessors."

This action was commenced by the State of Connecticut to recover of the Travellers' Insurance Company, under the first of the statutes quoted, taxes due for the year 1898, from non-resident stockholders. The defendant answered, alleging that its capital stock consisted of 10,000 shares, of which 8201 were owned by residents and 1799 by non-residents of the State; that is was the owner of a large amount of real estate on which it had been assessed and had paid a tax, and adding these averments:

" 7. The market value of the stock of the defendant company on the 1st day of October, 1898, was $250 per share.

" 8. All of the said resident owners of said stock were as-

sessed upon the stock owned by them respectively on the first day of October, 1898, at an assessed valuation equal to the said market value of said stock less a large deduction therefrom by reason of the company's said investments in real estate.

"9. The amount per share sought to be collected from the defendant in this action as a tax upon the stock owned by said non-resident shareholders is far in excess of the amount per share paid and required to be paid as a tax by the several resident shareholders aforesaid on the stock owned by them on the said 1st day of October, 1898."

A demurrer to this answer was sustained and judgment entered for the State, which was affirmed by the Supreme Court of the State, 73 Conn. 255, and thereupon the case was brought here on error.

*Mr. William R. Matson* and *Mr. Lucius F. Robinson* for plaintiff in error.

*Mr. Charles Phelps* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The single question presented for our consideration is whether this legislation of the State of Connecticut in respect to the taxation of the shares of stock in a local corporation held by non-residents is in conflict with paragraph 1 of section 2 of article IV of the Federal Constitution, or the Fourteenth Amendment thereto. It is alleged that there is such discrimination between resident and non-resident stockholders as works a denial of the equal protection of the laws, and to the prejudice of citizens of other States. The stock of the non-resident stockholder is assessed at its market value without any deduction on account of real estate held by the corporation. The stock of the resident stockholder is assessed at its market value, less the proportionate value of all real estate held by the corporation upon which it has already paid a tax. As thus stated, there would appear to be a wrongful discrimination, and that the non-resident stockholder was subjected to a larger burden of

taxation than the resident stockholder, and this not as a result of the action of any mere ministerial officers in making assessments, but by reason of the direct command of the statute to include the real estate in the valuation in the one case and to exclude it in the other.

But this apparent discrimination against the non-resident disappears when the system of taxation prevailing in Connecticut is considered. By that system the non-resident stockholder pays no local taxes. He simply pays a state tax, contributes so much to the general expenses of the State. While, on the other hand, the resident stockholder pays no tax to the State, but only to the municipality in which he resides. In other words, the State imposes no direct taxes for its benefit upon the property belonging to residents, but collects its entire revenue from corporations, licenses, etc. The rate of state tax upon the non-resident stockholder is fixed, fifteen mills on a dollar, applying equally to all, while the rate of local taxation varies in the several cities and towns according to the judgment of their local authorities as to the amount necessary to be raised for carrying on the municipal government. Obviously the varying difference in the rate of the tax upon the resident and the non-resident stockholders does not invalidate the legislation. How then can it be that a difference in the basis of assessment is such an unjust discrimination as necessarily vitiates the tax upon the non-resident? The resident stockholder does not pay the fifteen mills to the State which is demanded of the non-resident, and the non-resident stockholder does not pay to any locality the sum, greater or less than fifteen mills, which may be imposed by the authorities of that locality. In respect to this the Supreme Court, in its opinion, said (p. 281):

"It is unnecessary to consider whether, or under what circumstances, the limitations imposed by a State in respect to the mutual relations of members of its corporations in the matter of taxation may transform legislation for that purpose into a denial of rights secured to citizens of other States; it is enough for present purposes that a mere inequality in the stress of taxation cannot produce that effect.

"But the claim that in this case the inequality operates

against non-residents or citizens of other States as a class is un-founded. While the admissions of the demurrer assume the tax in respect to the defendant for this year to bear more heav-ily on non-residents than on residents, the general effect of the law is matter of common knowledge. The average rate of tax-ation for municipal purposes for the 168 towns approximates fifteen mills, which is the rate for the special tax imposed in respect to non-resident shares; but the average rate for munic-ipal taxation in the ten larger towns (representing much more than half the grand list of the State) is about twenty-one mills. The clear purpose of the legislature in fixing the mode of val-uation for the property subject to a single rate for special taxation and the valuation for the property subject to widely varying rates for municipal taxation, was to approximate a gen-eral equality in the burden that should fall on the two classes of property; and it well may be that the rule objected to in respect to the valuation of the interests of resident shareholders in corporations investing in taxable land still leaves, as a whole, a lighter burden of contribution resting upon non-resident share-holders."

In other words, the State, dealing with the question of taxa-tion of the shares of stock in a local corporation, found two classes; one, shares held by residents, and the other, those held by non-residents. It was believed that a resident in a city or town, enjoying all the benefits of local government, should be taxed for the expenses of that government upon all the prop-erty he possessed, whether that property consisted in part or in whole of shares of stock. On the other hand, the non-resident, enjoying little or none of the benefits of local government, was exempted from taxation on account of the expenses of such local government. At the same time it was not right that he should escape all contribution to the support of the State which created and protected the corporation and the property of all its stockholders, and so a tax was cast upon the non-resident stockholder for the expenses of the State. This, with kindred taxes, has been found sufficient to pay the running expenses of the state government. The resident is not called upon to pay any of the expenses of the State, but only to bear his propor-

tional share of those of the municipality.    The non-resident is called upon to pay no share of the expenses of the municipality, but only to contribute to the support of the State.

The legislature, with these inequalities before it, aimed, as appears from the opinion of the Supreme Court, to apportion fairly the burden of taxes between the resident and the non-resident stockholder, and the mere fact that in a given year the actual workings of the system may result in a larger burden on the non-resident was properly held not to vitiate the system, for a different result might obtain in a succeeding year, the results varying with the calls made in the different localities for local expenses.    If it be said that equality would be secured by imposing upon the resident stockholder a uniform tax for local purposes of fifteen mills, without any reduction on account of real estate held by the corporation, a gross inequality might result in many towns between the resident stockholder and other taxpayers of that locality, in that they might be called upon to pay much more than he.    On the other hand, if it be contended that inequality might be avoided by holding the situs of non-resident stockholders to be that of the city in which the corporation has its principal office, (in this case Hartford,) then unjust discrimination between that city and other localities would follow, in that to the one was given the total benefit of property which in fact belonged to parties living outside of the State.    So, while there may result from year to year a variance in the amount of the burden actually cast upon non-residents as compared with that cast upon residents, yet it is also true that a like inequality will exist between residents of different localities in the State by reason of the different rates of taxation in those localities.    You cannot put one resident against one non-resident stockholder and by a comparison of their different burdens determine the validity of the legislation any more than you can place a stockholder resident in one municipality over against a stockholder resident in another municipality, and by comparison of their different burdens determine the validity of the tax law in respect to resident stockholders.    It does not seem possible to adjust, with unerring certainty, all the varying burdens which grow out of the fact that some of the stock of

the various state corporations is held outside of the State and some within the State, and the latter in separate municipalities with different rates of taxation.

It may also be said that apparently equality would be more certainly secured by making the asssesment in each case upon the market value of the stock, diminished by the value of the real estate upon which taxes have been paid. But here again a difficulty is presented. Many of the taxable corporations own no real estate, and much of the real estate which belongs to corporations who have investments therein is located outside of the State. According to the returns made by this particular corporation, out of a holding in real estate amounting in value to $1,778,662.05, upon which it had paid taxes, that which was situated in Connecticut was valued at only $137,965.81. Now, it may be true that as to the real estate held outside of the State the title and possession of the corporation are protected not by Connecticut but by the State in which such real estate is found. But can it be said that there was any unjust discrimination between the different non-resident stockholders in the various corporations, or even between all the non-resident and resident stockholders, when the State, ignoring this matter of real estate, and considering that the corporation as a state institution was protected in all its corporate rights by the State, provided that non-resident stockholders should pay upon the market value of their investments in the property of that corporation? In respect to this the Supreme Court of Connecticut said (p. 280):

"This change as to the valuation of the property and franchise of a corporation owning taxable real estate, for the purposes of municipal taxation, may produce in some instances more inequality, may be uncalled for or unwise (upon such considerations the action of the legislature is conclusive), but it certainly does not transmute the legislation in question from permissible taxation to a denial to citizens of other States of that common right in the use and enjoyment of property secured to our own citizens. The plan of taxation remains the same; after the change in valuation as before, it is simply a mode of securing to towns for purposes of municipal taxation

the benefit of that part of the corporate property represented by shares owned by their inhabitants, and subjecting to state taxation that part represented by shares owned by non-residents, and which cannot be thus subjected to municipal taxation. Here is no hidden purpose to attack the rights of citizens of other States—no evidence that the underlying intention and real substance of the legislation is to hinder citizens of other States in acquiring and holding property. The alleged hindrance is confined to those who buy stock in corporations paying taxes on real estate. Only a small number of the corporations within the scope of the act own taxable real estate to any appreciable amount. Can it be said that the law regulating the taxation of half a dozen different kinds of corporations is really intended to hinder citizens of other States from owning stock in the small number of these corporations that may from time to time invest in taxable real estate; or, that the real substance of the law changes from legitimate taxation to hostile and forbidden discrimination with each change of its investments by a corporation? Clearly the legislature is free from any sinister motive in this legislation."

But further, the validity of this legislation does not depend on the question whether the courts may see some other form of assessment and taxation which apparently would result in greater equality of burden. The courts are not authorized to substitute their views for those of the legislature. We can only consider the legislation that has been had, and determine whether or no its necessary operation results in an unjust discrimination between the parties charged with its burdens. It is enough that the State has secured a reasonably fair distribution of burdens, and that no intentional discrimination has been made against non-residents.

This court has frequently held that mere inequality in the results of a state tax law is not sufficient to invalidate it. Thus, in *Tappan* v. *Merchants' National Bank*, 19 Wall. 490, 504, it was said:

" Absolute equality in taxation can never be obtained. That system is the best which comes the nearest to it. The same rules cannot be applied to the listing and valuation of all kinds

of property. Railroads, banks, partnerships, manufacturing associations, telegraph companies, and each one of the numerous other agencies of business which the inventions of the age are constantly bringing into existence, require different machinery for the purposes of their taxation. The object should be to place the burden so that it will bear as nearly as possible equally upon all. For this purpose different systems adjusted with reference to the valuation of different kinds of property are adopted. The courts permit this."

Again, in *State Railroad Tax Cases*, 92 U. S. 575, 612 :

" Perfect equality and perfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized. It may be admitted that the system which most nearly attains this is the best. But the most complete system which can be devised must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect. And when we come to its application to the property of all the citizens, and of those who are not citizens, in all the localities of a large State like Illinois, the application being made by men whose judgments and opinions must vary as they are affected by all the circumstances brought to bear upon each individual, the result must inevitably partake largely of the imperfection of human nature and of the evidence on which human judgment is founded."

And in *Merchants' Bank* v. *Pennsylvania*, 167 U. S. 461, 464 :

" This whole argument of a right under the Federal Constitution to challenge a tax law on the ground of inequality in the burdens resulting from the operation of the law is put at rest by the decision in *Bell's Gap Railroad* v. *Pennsylvania*, 134 U. S. 232."

For these reasons we are of opinion that the act challenged cannot be held to conflict with either of the clauses of the Federal Constitution referred to, and the judgment of the Supreme Court of Connecticut is

*Affirmed.*

MR. JUSTICE HARLAN did not hear the argument and took no part in the decision of this case.