**HESS v. MULLANEY et al.**

No. 6531–A.

United States District Court
Alaska
First Division. Juneau.
Feb. 18, 1952.

Faulkner, Banfield & Boochever, Juneau, Alaska, Medley & Haugland, Seattle, Wash., Collins & Clasby, Fairbanks, Alaska, for plaintiff.

J. Gerald Williams, Atty. Gen., John H. Dimond, Asst. Atty. Gen., for defendant.

Faulkner, Banfield & Boochever, Juneau, Alaska, for intervenor.

FOLTA, District Judge.

By this action to recover taxes paid under protest on real and personal property, the plaintiff and the intervenor assail the validity of Chapter 10, S.L.A.1949, the Territory's first property tax law. Until 1949 only municipalities, school and public utility districts taxed such property within their boundaries. In the remainder of the Territory real and personal property remained untaxed.

Plaintiff and intervenor contend:

(1) That the statute is so lacking in uniformity and equality as to contravene the 5th and 14th Amendments to the Constitution; the Civil Rights Act, 8 U.S.C.A. § 41 and Sec. 9 of the Organic Act, 48 U.S.C.A. § 78.

(2) That the provisions in Sec. 3 for the valuation of mining claims is so ambiguous that it is not susceptible of any reasonable construction, and that it, too violates the uniformity requirement of Sec. 9 of the Organic Act.

(3) That the tax on boats is not according to value, as required by Sec. 9 of the Organic Act.

Equality and Uniformity

In support of the first contention it is argued that because the act permits municipalities, school and public utility districts to assess, collect and enforce the tax under their own ordinances and resolutions, which differ from each other, and also permits them to retain the tax collected for their own benefit, the requirements of uniformity and equality are infringed.

The pertinent parts of the act are as follows:

"Section 3. * * * there is hereby levied, and there shall be assessed, collected and paid, a tax upon all real property and improvements and personal property in the Territory at the rate of one per centum of the true and full value thereof. * * *

"Section 4. Tax upon Property within Incorporated Cities and Districts. The tax levied under the provisions of Section 3 upon the property within the limits of an incorporated city or town, independent school district or incorporated school district in the Territory shall be assessed, collected and enforced in the manner prescribed by the property tax law of the municipality or district, by and at the expense of the municipalities and districts prorated proportionately between each, provided that amounts levied but which prove uncollectible, and the cost of foreclosure on delinquent accounts shall be borne by the city or school and public utility district."

■ The question presented, in connection with this aspect of the case, is whether the requirements of equality and uniformity are infringed by allowing municipalities, school and public utility districts to assess, collect and enforce the tax under their own diverse ordinances and resolutions and thereafter to retain and use the funds for their own purposes. The defendant contends that there has been a classification of property within and that without municipalities, school and public utility districts, and that therefore, the differences complained of, being attributable to this classification are immaterial. However, since a classification may not be based on geographical lines or mere location of the property, this conclusion falls with the premise.

■ Undoubtedly in adjusting the newly created tax system to municipalities, school and public utility districts the Legislature was induced, from considerations of administrative convenience and economy, to make full use of the already existing facilities and organizations. It is inevitable that to the extent such ordinances and resolutions differ, differences of the kind pointed out will result. But it does not follow that the law must be struck down if there is no discrimination in a constitutional sense. Cf. Township of Pine Grove v. Talcott, 19 Wall. 666, 675, 22 L.Ed. 227; Waggoner Estate v. Witchita Co., 3 F.2d 962, 964–965; affirmed 273 U.S. 113, 47 S.Ct. 271, 71 L.Ed. 566. Neither may the Court concern itself with theoretical inequalities or hypothetical cases. Prejudice must be shown by those attacking the act, Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 191, 65 S.Ct. 624, 89 L.Ed. 857, and in the absence of such a showing, the presumption of constitutionality prevails. Here it has not been shown that the assessment of property under such ordinances and resolutions is not according to value and hence the differences complained of are not such as would result in a lack of equality or uniformity, for it appears to be the sounder view that since it is uniformity of the burden of taxation, rather than method of imposing the burden, that is essential, the constitutional requirements of equality and uniformity do not apply to the method or procedure governing the levy, assessment and collection of taxes. 1 Cooley on Taxation, 4th Ed., Secs. 260, 299, 303–4, 308 and 336; Charleston Federal Sav. & Loan Ass'n v. Alderson, supra.

■■ It is also argued that because the act permits municipalities, school and public utility districts to retain the tax collected and some of them have failed to collect the tax, this omission results in the exemption of the real and personal property in such districts. This so-called exemption, however, is merely a consequence of the failure of such taxing units to collect the tax and is not to be confounded with an exemption in the legal sense which must be expressly

granted by law and which results in an additional burden on all other property. Nor can the failures or errors of local officials in the application of the criteria of valuation or in other respects affect the validity of the act or infringe the requirements of equality or uniformity. Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 190, 65 S.Ct. 624, 89 L.Ed. 857; Cummings v. National Bank, 101 U.S. 153, 161, 25 L.Ed. 903; Michigan Central Railroad Co. v. Powers, 201 U.S. 245, 295, 26 S.Ct. 459, 50 L.Ed. 744.

■ So far as the distribution of the revenue derived from the tax is concerned, the allocation of such funds is a matter for the Legislature. General American Tank Car Corp. v. Day, 270 U.S. 367, 372, 46 S. Ct. 234, 70 L.Ed. 635; Columbus So. R. Co. v. Wright, 151 U.S. 470, 14 S.Ct. 396, 38 L.Ed. 238; Carmichael v. Southern Coal Co., 301 U.S. 495, 522–523, 57 S.Ct. 868, 81 L.Ed. 1245.

The act provides for a board of equalization in each of the four judicial divisions, with the right of a hearing de novo on appeal to this court, but does not provide for a territorial board of equalization to equalize assessment as between the several divisions. It is contended that this omission also violates the requirement of equality and uniformity.

■ It may be that in omitting to make this provision the Legislature was influenced by the practical difficulties of equalizing assessments between divisions comprising an area of nearly 600,000 square miles, with a great diversity of geography, economy and density of population. Irrespective of that, however, it would appear that the failure to provide for a territorial board of equalization is not fatal. Cf. Michigan Central Railroad v. Powers, 201 U.S. 245, 301, 26 S.Ct. 459, 50 L.Ed. 744; Cummings v. National Bank, 101 U.S. 153, 160, 25 L.Ed. 903; Stanley v. Supervisors of Albany County, 121 U.S. 535, 551, 7 S.Ct. 1234, 30 L.Ed. 1000. Moreover, there is no showing of intentional or systematic discrimination, to the prejudice of plaintiff or intervenor; Sioux City Bridge Co. v. Dakota County, Neb., 260 U.S. 441, 43 S.Ct.

190, 67 L.Ed. 340; Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 192, 65 S.Ct. 624, 89 L.Ed. 857. And the requirement of procedural due process is satisfied by affording taxpayers an opportunity to be heard on assessments, with the right of appeal to this Court. Mt. St. Mary's Cemetery v. Mullins, 248 U.S. 501, 506, 39 S.Ct. 173, 63 L.Ed. 383.

I am of the opinion, therefore, that neither the plaintiff nor intervenor has shown that the act is lacking in uniformity or equality because of the defects alleged.

### Valuation of Mining Claims

By the act of June 3, 1948, 62 Stat. 302, Congress amended Sec. 9 of the Organic Act to provide that: "Unpatented mining claims and non-producing patented mining claims, which are also unimproved, may be valued at the price paid the United States therefor, or at a flat rate fixed by the legislature, but if the surface ground is used for other than mining purposes, and has a separate and independent value for such other purposes, or if there are improvements or machinery or other property thereon of such a character as to be deemed a part of the realty, then the same shall be taxed according to the true and full value thereof."

Sec. 3 of the act passed in pursuance of the authority thus granted, provides that: "For the purposes of this section the assessed value of unimproved, unpatented mining claims which are not producing, and non-producing patented mining claims upon which the improvements originally required for patent have become useless through deterioration, removal or otherwise, is hereby fixed at $500.00 per each 20 acres or fraction of each such claim, except that if the surface ground of any such claim is used for other than mining purposes and has a separate and independent value for such other purposes, the valuation as pertains to such non-mining uses and of improvements incidental to such uses shall be according to the full and true value thereof."

■ It is clear that the Legislature authorized the valuation of the kinds of mining claims referred to at a flat rate

434

rather than at the price paid the United States. But it is contended that Sec. 3 is so vague and uncertain as to be practically meaningless. It may be conceded that it is possible to wrest several meanings from the language employed, but it is my opinion, in view of the fact that the size of a placer claim is 20 acres, that an association placer claim consists of 160 acres and that the maximum size lode claim is only slightly more than 20 acres in area, that it was the intent of the Legislature to authorize the valuation of each mining claim, whether it embraces 20 acres or less, and of each 20 acres of an association placer claim, at $500. It may be presumed that the Legislature knew that the maximum size lode claim slightly exceeds 20 acres, but since the law does not concern itself with trifles, the excess may be disregarded. The fact that under this construction fractional claims considerably less than 20 acres in area may be valued at $500 each is of no significance, for this very result must have been within the contemplation of Congress when it authorized valuation at a flat rate.

### Taxation of Vessels

Finally it is contended that the tax on boats is not according to value. Chap. 88 S.L.A.1949 added the following to Sec. 3 of the act.

"With respect to any boat or vessel engaged in marine service on a commercial basis and subject to the provisions of this Act, the owner of said boat or vessel may elect:

"(a) To pay the tax levied hereunder on such boat or vessel on the basis of the value thereof as defined herein, or,

"(b) To pay $4.00 per net ton of such vessel's registered tonnage, but in any event the amount payable hereunder, for each such boat or vessel, shall not be less than $20.00 per annum."

It is argued that the alternative rate fixed by subsection (b) is not according to value and that the clause fixing the tax at the minimum of $20 applies also to subsection (a) and thereby invalidates Chap. 88 because the tax would not be according to value.

It appears reasonably clear that it was the intent to impose the minimum tax of $20 on all vessels of less than 5 net tons and hence the application thereof must be limited to subsection (b). It may well be that the tax fixed by subsection (b) is a substantial equivalent of the tax of 1% on the true value, but it is unnecessary to speculate as to this, for it is obvious that by Chap. 88, boats of the kind described are classified for the purpose of taxation and one of the purposes of classification is to permit taxation at a different rate. While it appears that the intervenor belongs to the class referred to, it has failed to show that the tax under subsection (b) will bear more heavily upon it than upon any other member of this class or that it will be otherwise prejudiced by the classification, and hence the attack against Chap. 88 must likewise fail. Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 190, 65 S.Ct. 624, 89 L.Ed. 857.

Accordingly, I am of the opinion that the act is valid.