(No. 32890.—

THE DEPARTMENT OF REVENUE, Appellant, *vs.* WARREN PETROLEUM CORPORATION, Appellee.

*Opinion filed March 17, 1954.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellant.

W. M. SPARKS, and R. S. TRIPPET, both of Tulsa, Oklahoma, for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The Department of Revenue brought this action in the circuit court of Cook County against the Warren Petroleum Corporation, a Delaware corporation, to recover certain taxes imposed by the Private Car Line Companies Tax Act (Ill. Rev. Stat. 1953, chap. 120, pars. 372.1 *et seq.*) The corporation's amended answer challenged both the applicability of the act and its constitutionality. A motion to strike the amended answer was overruled, and when the Department elected to stand upon its motion, judgment was entered for the corporation. Since the revenue and the validity of a statute are involved, the Department has appealed directly to this court.

The act imposes a tax on the "operating personal property" of companies, other than railroad companies, which own or operate railroad cars on lines running in or through Illinois. "Operating personal property" is defined in section 1(3) as "all rolling stock, car equipment, rights, franchises, and all other intangible personal property connected with or used in the operation" of the company, or held by it as occupant or lessee.

Appellee is not, as it first contends, exempt from the tax. Section 1 of the act exempts "private car line companies * * * whose ownership or operation of railroad cars is incidental to the principal business of such com-

panies and whose cars and capital stock are subject to assessment by local assessment officers in any county of this State and who are paying franchise taxes to the State of Illinois." It is apparently conceded that appellee pays franchise taxes and that its operation of railroad cars is incidental to its principal business, the manufacture and marketing of gasoline. Under our statutes, however, no foreign corporation is subject to assessment upon its capital stock, either by local assessors or otherwise. (Ill. Rev. Stat. 1953, chap. 120, pars. 498, 499; *Western Union Telegraph Co.* v. *Lieb,* 76 Ill. 172; *Hart* v. *Toman,* 373 Ill. 462, 466, 467.) Appellee therefore fails to qualify under this exemption.

Appellee also complains that in assessing its property the Department failed to inspect any of its cars, and that the value of the cars was not determined on an individual basis. The statute does not require assessment to be made in this manner (see Ill. Rev. Stat. 1953, chap. 120, par. 372.2,) and it is not alleged that the Department's assessment resulted in an overvaluation. Moreover, even if such an allegation had been made, it would not constitute a defense to this action to collect taxes. Unless it is also alleged that an assessment was fraudulent or that the property was assessed at a higher rate than other property subject to the tax, a claim of overvaluation may be considered only in the administrative proceedings provided by the act. Ill. Rev. Stat. 1953, chap. 120, pars. 372.4a, 372.4b; *cf. People ex rel. Ingram* v. *Wasson Coal Co.* 403 Ill. 30; *People ex rel. Tedrick* v. *Allied Oil Corp.* 388 Ill. 219; *People* v. *Klein,* 388 Ill. 353.

Appellee's principal objection is that imposition of the tax upon its operating personal property discriminates against it as a foreign corporation in favor of domestic corporations of like character, and therefore violates the State and Federal constitutions. This infirmity is said to result from the fact that a company subject to the act is

taxed at the "average rate of taxation" throughout the State, while a company exempted from the act by section 1 is taxed at the rate prevailing where its principal place of business is located.

To understand this objection, a description of the scheme of taxation under the act is necessary. Section 2 directs the Department to assess the operating personal property of car line companies by valuing the entire property of each company as a unit, making allowance for any non-operating personal property and any real estate. Section 4 provides that the latter two kinds of property, so far as they are located in Illinois, are to be assessed locally. In the case of operating personal property used partly within and partly without the State, section 4 provides a formula by which the Department determines the fair value allocable to Illinois. Under section 5 the assessed value thus determined is then equalized by the Department so that the property will be assessed at the same proportion of its value as other property throughout the State.

After the property is assessed, it is taxed under section 6 at what is termed the "average rate of taxation" in Illinois. This figure is computed by dividing "the aggregate of property taxes extended for the State and its various taxing districts by the total assessed valuation of all the property throughout the State upon which said taxes were extended." In computing the average rate of taxation, all counties are included, and not just those in which the car line company's property has been present during the year.

A company which falls within the exemption of section 1, on the other hand, is not taxed at the average rate of taxation. Its rolling stock, and other tangible personal property, as well as its intangible property, as represented by its capital stock, are assessed and taxed locally in the county and taxing districts where its principal place of business in this State is located, at whatever local tax rate

prevails there. Ill. Rev. Stat. 1953, chap. 120, pars. 372.1, 498, 538, 553.

As we observed above, no foreign corporation can qualify under the exemption clause in section 1, since it is only domestic corporations which are assessed and taxed on capital stock. Section 1, however, does not expressly differentiate between foreign and domestic corporations as such, for some domestic corporations might also fail to qualify under the exemption. This results from the fact that the section exempts only those corporations whose capital stock is assessed locally, whereas under our statutes capital stock is assessed by the Department of Revenue except in the case of manufacturing and mercantile companies and certain other categories of enterprises not relevant here. (Ill. Rev. Stat. 1953, chap. 120, pars. 498, 502.) We think, however, that appellee is correct in stating that the act does in effect differentiate between foreign and domestic corporations as such, so far as the rate of taxation is concerned, for even those domestic corporations which would not fall within the exemption clause of section 1 are nevertheless subjected to a local rather than a State-wide average tax rate, by virtue of section 7a of the act, which provides that in the case of any car line company incorporated in Illinois the Department shall certify its assessment to the county clerk of the county where such company has its principal place of business, and that the county clerk shall extend taxes on the amount certified in the same manner as taxes are levied on other property in the taxing districts where the company is located. In short, the appellee, but for the fact that it is a foreign corporation, would be taxed at local rates rather than a State average rate. We come then to the question whether this differentiation is unconstitutional.

The appellee makes no showing that the difference in the mode of taxation as between it and domestic companies produces any inequality or that the inequality, if any, does

not operate in favor of the appellee. Its answer apparently proceeds on the theory that any difference in the treatment of domestic and foreign corporations is in itself objectionable. The requirements of equal protection are not so rigorous. It is settled that if there is substantial equality in the resulting burdens, identity in the mode of taxation is not required, for unless the classification works adversely to the appellee, he has no standing to challenge it. (*Concordia Fire Ins. Co.* v. *Illinois,* 292 U.S. 535, 547; *Darnell* v. *Indiana,* 226 U.S. 390.) The burden is thus upon the opponent of the tax to allege and prove that its operation results in less favorable treatment, taking into consideration the effect of other taxes imposed. *Concordia Fire Ins. Co.* v. *Illinois,* 292 U.S. 535, 547; *Lawrence* v. *State Tax Com.* 286 U.S. 276, 283, 284; *General American Tank Car Corp.* v. *Day,* 270 U.S. 367, 374; *Travellers' Ins. Co.* v. *Connecticut,* 185 U.S. 364, 367.

Certainly in view of the distribution of commerce and industry throughout the State, there is no reason to suppose that foreign car line companies would not generally fare better with a State-wide average tax rate, than with one or more local rates in those counties in which their activities center. Indeed, even an allegation that there is a variation between the tax imposed on appellee and that imposed on domestic car line companies would not establish that the act was unconstitutional, for it is only those variations that are both inherent in the system and substantial in amount which the fourteenth amendment forbids. If the tax in question does not necessarily involve a discrimination, then the mere fact that in a given year the actual workings of the system result in a greater burden upon the taxpayer will not invalidate the legislation. *Travellers' Ins. Co.* v. *Connecticut,* 185 U.S. 364, 369.

On this point we think the decision in *General American Tank Car Corp.* v. *Day,* 270 U.S. 367, is controlling. In that case the State of Louisiana imposed a tax of 25 mills

per dollar upon the rolling stock of foreign corporations not having a domicile in the State. Such corporations were exempted from all local taxation. It was contended that the act was unconstitutional because the average of all local taxation throughout the State was only 21 mills. The Supreme Court held that this had not been shown, but also stated that "Where the statute imposing a tax which is in lieu of a local tax assessed on residents, discloses no purpose to discriminate against non-resident taxpayers, and in substance does not do so, it is not invalid merely because equality in its operation as compared with local taxation has not been attained with mathematical exactness. * * * In the absence of a purpose to discriminate, disclosed by the legislation itself, we are not prepared to say that a four mills variation in one year not shown to be a necessary or continuing result of the scheme of taxation adopted, would be an unconstitutional discrimination; for in such a scheme of complementary tax statutes, however fairly devised, it would be impossible to provide in advance against occasional inequalities as great as that here complained of." 270 U.S. 367, 373, 374.

The fact that the State rate is calculated by including counties in which the appellee's property was never present does not invalidate the act. That precise contention was made and rejected in *Michigan Central Railroad Co.* v. *Powers,* 201 U.S. 245. The court there pointed out that to require the average rate to be determined for each company subject to the act on the basis of the particular counties in which it had operated would produce confusion and inequality. 201 U.S. 245, 300.

Wholly apart from appellee's failure to allege that the tax necessarily and substantially discriminates against it, we think that the discrimination, if such there is, must be upheld as based upon a reasonable difference in circumstances between the appellee and domestic car line companies. It has long been settled that the power of the legis-

lature to make classifications, particularly in the field of taxation, is very broad, and that the fourteenth amendment imposes no "iron rule" of equal taxation. (*Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 U.S. 232, 237; *cf. Madden* v. *Kentucky,* 309 U.S. 83, 88; *New York Rapid Transit Corp.* v. *City of New York,* 303 U.S. 573, 578.) The reasons justifying the classification, moreover, need not appear on the face of the statute, and the classification must be upheld if any state of facts reasonably can be conceived that would sustain it. (*New York Rapid Transit Corp.* v. *City of New York,* 303 U.S. 573, 578; *Carmichael* v. *Southern Coal & Coke Co.* 301 U.S. 495, 509, 510.) The burden therefore rests on one who assails the statute to negate the existence of such facts. *Lawrence* v. *State Tax Com.* 286 U.S. 276, 283; *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U.S. 580, 584; *Concordia Fire Ins. Co.* v. *Illinois,* 292 U.S. 535, 547.

In enacting this legislation the General Assembly may well have supposed that in the case of foreign car line companies there would be no single district to which its property as a whole could fairly or plausibly be assigned for taxation, and that to tax the property piecemeal in all the counties where it ever appeared would involve difficulties of allocation which would seriously hinder the administration and collection of the tax. Such considerations of administrative convenience furnish a justification for legislative classification. *Carmichael v. Southern Coal & Coke Co.* 301 U.S. 495, 511; *Madden* v. *Kentucky,* 309 U.S. 83, 89, 90.

Appellee suggests that the difficulties supposedly involved in establishing a local situs for its rolling stock might be avoided by allocating the value of that property to various counties in proportion to the relative length of railroad track over which its stock runs, in the manner in which rolling stock of railroads is assessed, and it is pointed out that the act itself provides for this alternative in the

event that the method now complained of should be held unconstitutional. (Ill. Rev. Stat. 1953, chap. 120, par. 372.9.) The validity of the act, however, does not depend on the existence of some other form of assessment or tax which could have been used. (*Travellers' Ins. Co.* v. *Connecticut,* 185 U.S. 364, 371.) It is enough that the system presently employed is not itself unreasonable. For the reasons stated in this opinion, therefore, the judgment of the circuit court must be reversed and the cause remanded, with directions to grant the appellant's motion to strike the amended answer.

*Reversed and remanded, with directions.*