**HESS et al.**

v.

**MULLANEY, Commissioner of Taxation.**

**No. 13533.**

United States Court of Appeals Ninth Circuit.

May 25, 1954.

As Amended June 3, 1954.

Rehearing Denied June 23, 1954.

See, also, 9 Cir., 189 F.2d 417.

---

5. Rule 37(c), Federal Rules of Civil Procedure.

Faulkner, Banfield & Boochever, H. L. Faulkner, Juneau, Alaska, for appellant Hess.

Medley & Haugland, Seattle, Wash., Collins & Clasby, Fairbanks, Alaska, for appellant Alaska Juneau Gold Mining Co.

J. Gerald Williams, Atty. Gen., John H. Dimond, Asst. Atty. Gen., for appellee.

Before DENMAN, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

In 1949 the Alaska Legislature, Chapter 10, Session Laws of Alaska, 1949, enacted what purported to be a general property tax for that Territory. It was the first attempt in Alaska to impose an ad valorem tax upon property in the Territory generally. The appellants are taxpayers within the Territory who sought in the court below to procure a determination and adjudication that the law in question is invalid and void, primarily for want of uniformity. In this connection it is asserted that the law violates § 9 of the Alaska Organic Act, as amended, 48 U.S.C.A. § 78, providing with respect to the Territory that all taxes shall be uniform upon the same class of subjects,[1] and that it operates

---

1. "All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the true and full value thereof, except that un-patented mining claims and non-producing patented mining claims, which are also unimproved, may be valued at the price paid the United States therefor, or at a flat rate fixed by the legislature, but if

to deny the appellants due process of law under the Fifth Amendment and the equal protection of the law under the Fourteenth Amendment to the Constitution, and is as well violative of the Civil Rights Act, Title 42 U.S.C.A. § 1981, prescribing that all persons shall be subject to "like * * * taxes, licenses, and exactions of every kind, and to no other."

The complaint of Hess alleges that he owns real and personal property of various kinds all situated outside the boundaries of any incorporated city; that in 1949 the defendant Commissioner levied and assessed upon such property a tax of $675.01 which he paid under protest. This sum plus interest he was required to pay he now seeks to recover on the ground of the alleged invalidity of the law.

Alaska Juneau Gold Mining Company alleged in its complaint in intervention that it owned substantial property in Alaska outside any municipality, or any school or public utility district, upon which a tax was levied and assessed in 1949 in the sum of $703. This sum, with interest demanded, intervenor paid under protest and now, like the plaintiff, seeks to recover on precisely the same grounds set forth in the complaint. The appeal is from the judgment, D.C., 102 F.Supp. 430, which in effect rejected the claims of invalidity of the statute.

The principal claim of inequality and lack of uniformity in the law arises out of its different treatment of property outside of incorporated cities, school districts and public utility districts on the one hand, and property within such cities and districts on the other. § 3 provides that for the year 1949 and each subsequent year, "there is hereby levied, and there shall be assessed, collected and paid, a tax upon all real property and improvements and personal property in the Territory at the rate of one per centum of the true and full value thereof." (Note that this language covers all property without distinction.) § 4 provides in part: "The tax levied under the provisions of Section 3 upon the property within the limits of an incorporated city or town, independent school district or incorporated school district in the Territory shall be assessed, collected and enforced in the manner prescribed by the property tax law of the municipality or district * * *. All of the tax levied under this Act which is so collected shall be remitted to such municipalities or school districts * *. Taxes collected hereunder within a public utility district shall be handled in a like manner to those collected in cites or other incorporated municipalities, including collection costs, remissions and school millage levy provisions as set forth herein." § 5 provides that: "The tax levied under the provisions of Section 3 upon property outside the limits of an incorporated city, independent school district, or incorporated school district or public utility district in the Territory shall be assessed, collected and enforced as provided in this Act."

Thus it will be seen that upon the face of the statute and according to its terms, § 3 imposes a tax of one per centum or ten mills upon all real and personal property within the Territory and wheresoever situated. By § 4 such tax upon property within a city, school district, or utility district is to be "assessed, collected and enforced in the manner prescribed by the property tax law of the municipality or district," and the tax thus collected in the municipality or district is to be retained by such collecting entity subject to certain other provisions not here material that amounts collected by certain school dis-

---

the surface ground is used for other than mining purposes, and has a separate and independent value for such other purposes, or if there are improvements or machinery or other property thereon of such a character as to be deemed a part of the realty, then the same shall be taxed according to the true and full value thereof." 37 Stat. 514, as amended, 48 U.S.C.A. § 78.

tricts and not used for school purposes shall revert to the territorial treasurer.[2]

It is claimed that this system of taxation as prescribed by the law itself is completely lacking in uniformity and equality and that in consequence thereof it is void. It is also asserted that as applied and enforced by the taxing authorities it operates to discriminate against the appellants and in its practical working bears so unequally on persons and property of the same class that it must be held to be unenforceable.

For the purposes of its administration it is provided in the law that assessors shall be appointed for each judicial division within the Territory to whom tax returns are required to be made. The record shows that within the Fourth Division, where the City of Fairbanks and the Fairbanks school district are located, substantially half of the assessable property is within the city and school district. In the First Division the property in the City of Juneau and the Juneau Independent School District constitutes more than twice as much assessable property as in the First Division outside of the municipalities and districts; and the same is true of the City of Ketchikan, also within the First Division. In the City of Anchorage there is nearly twice as much assessable property as in the whole of the Third Division outside of the city and districts.

It is argued that under these circumstances the classification made by the Act between property within and without municipalities and districts is arbitrary and unreasonable; in effect it amounts to an exemption from the tax of all this property within cities and districts; that what the territorial legislature has done has been to levy a tax of ten mills solely on property outside municipalities, school districts and public utility districts. This means, appellants say, that the ad valorem tax for the support of the Territory falls exclusively upon the outside property.

As was suggested in Alaska Steamship Co. v. Mullaney, 9 Cir., 180 F.2d 805, 817, we assume that the uniformity clause of the Organic Act requires the same measure of uniformity and equality which is required by the equal protection clause of the Fourteenth Amendment as applied to State taxing laws. Unquestionably systematic geographical discriminations in the burden of taxation have been held void. Cumberland Coal Co. v. Board of Revision of Tax Assessments in Greene County, 284 U.S. 23, 28, 52 S.Ct. 48, 76 L.Ed. 146. We think that so far as the statute itself is concerned, it will not bear the construction which appellants attempt to place upon it. We observe here no provision for exemption of any property whatever from the 1% ad valorem tax which by the express provisions of § 3 is levied upon "all real property and improvements and personal property in the Territory." It is true that § 4 provides that the tax just mentioned as it applies to property within the limits of cities and districts "shall be assessed, collected and enforced in the manner prescribed by the property tax law of the municipality or district," and the same section also provides that when the tax so levied is collected, it may with certain exceptions be retained by the municipalities and districts for their own purposes. However, there is nothing in the Act to suggest that any part of the 1% tax shall not in fact be collected within the cities and districts. Rather, the unusual and perhaps novel aspect of the Act which gives rise to appellants' principal complaint relates not to who should pay the tax or from what property it should be collected, but rather which unit of government shall get the money.

It is difficult to perceive how so far as this aspect of the law is concerned it could make any difference whether the

2. In certain other cases where an incorporated municipality is within the boundary of the school district, the collections unused for school purposes are to revert to the municipality.

Territory of Alaska first collected into its treasury all the proceeds of the tax from all sources and then appropriated amounts equal to those collected from the municipalities and districts to such entities, or whether it simply let the cities and districts retain such collections as here provided. It is not unusual for states after collecting taxes on a state-wide basis to make distribution of revenues to municipal corporations, particularly in the case of school districts.[3] No requirements of uniformity or of equal protection of the law limit the power of a legislature in respect to allocation and distribution of public funds. Gen. Amer. Tank Car Corp. v. Day, 270 U.S. 367, 372, 46 S.Ct. 234, 70 L.Ed. 635; Carmichael v. Southern Coal Co., 301 U.S. 495, 521, 522, 57 S.Ct. 868, 81 L.Ed. 1245.

It is urged that the statute is invalid because it lacks the necessary mechanics to assure equalization of the assessed values between the different taxing units. The statute creates in each judicial division a Board of Assessment and Equalization. Each such Board is authorized to scrutinize the assessment roll and to take "corrective action" thereon. Any person whose name appears on the assessment roll may apply to the Board with respect to any alleged overcharge, error, omission or neglect of the assessor. Provision is made for an appeal "on a de novo basis" to the district court for the Territory of Alaska in such division. However, there is

no provision for an overall Board of Equalization authorized to equalize assessments either as between divisions or as between divisions and municipalities and districts.

The assessor, whose assessment roll is subject to revision by the Board of Equalization within his division, is authorized to prepare such roll only for property outside of the municipalities and school and public utility districts. The Act does not contemplate a review by the division Board of Equalization of assessments made within the several municipalities and districts.[4]

There is no doubt but that the absence of an arrangement for some overall method of equalization is a serious defect in a statute which unquestionably is not only unique but wanting in evidence of good legislative workmanship.[5] But with respect to the statute's failure to make provision for such equalization, we are not, at the suit of these appellants, permitted to pronounce the statute void on this account alone. There is no showing in the record that either of these appellants has suffered any harm for lack of a general territorial Board of Equalization. There is no showing that assessed values in the divisions in which appellant's property is situated are higher than those elsewhere. Appellants therefore are confronted by the rules stated in Roberts & Schaefer Co. v. Emmerson, 271 U.S. 50, 54, 55, 46 S.Ct. 375, 376, 70 L.Ed. 827; "But the plaintiff is not in a posi-

3. Cf. footnote 14 in Carmichael v. Southern Coal Co., 301 U.S. 495, 522, 57 S.Ct. 868, 81 L.Ed. 1245.

4. § 25(a) of the Statute authorizes an appeal to such a Board by "Any person whose name appears on the assessment roll for any division or who is assessed in any district". Conceivably the word "district" in the clause we have here boldfaced could be read in a generic sense so as to include cities, school districts, and public utility districts. However, the context of the statute indicates that assessments in such cities or districts were not considered to be subject to review by the Board. Thus § 26 provides that after appeal has been taken the assessor

shall furnish a record of the proceedings to be reviewed by the Board, § 27 provides for notice of the hearings to be held by the assessor, and § 29, while directing the assessor to give effect to the decisions of the Board, makes no provision for like corrections by any one else. § 30 provides for refunds to taxpayers pursuant to the decisions of the Board to be made by the Tax Commissioner who collects taxes from property outside cities and districts but makes no provision for similar refund by any city or district.

5. It was repealed by Chapter 22, Session Laws of 1953, the date of which is not disclosed.

tion to raise this question. As this court has often held, one who challenges the validity of state taxation on the ground that it violates the equal protection clause, cannot rely on theoretical inequalities, or such as do not affect him, but must show that he is himself affected unfavorably by the discrimination of which he complains."

Appellants further contend that whatever may be said for the law as written, yet the manner in which taxes are in fact collected in some places, and in other places either not collected, or not collected in full, amounts to a practical lack of uniformity which makes the attempted collection from appellants invalid. In support of this contention appellants insert in the record matters designed to show how the statutory scheme works or fails to work in the several municipalities and districts to which reference is made.

Long prior to the enactment of Chapter 10 here considered, cities and school districts within the Territory were authorized to and did levy and collect taxes for municipal and school purposes under and pursuant to municipal and school district ordinances. The one percentum tax called for by Chapter 10 and directed by § 4 thereof to be collected in the cities and districts in the manner prescribed by their local tax laws, was a tax apart from and in addition to the regular municipal and district taxes. § 4(c) of Chapter 10 in providing for the collection of the Chapter 10 levy by the cities and districts, provided "Such cities may assess and collect an additional tax on real and personal property situate in the said cities not to exceed the amount allowed by law, which tax shall be assessed and collected at the same time and in the same manner as the tax provided in Section 3 of this Act".

The record shows that in the year 1949 there was considerable diversity as between the various cities and districts in the manner in which taxes were assessed and collected. Thus the City of Fairbanks had an ordinance No. 384 which had been in effect since 1946 and which provided for the assessment, levy and collection of taxes on real and personal property within the city. On September 26, 1949, a tax for school and municipal purposes upon all taxable real and personal property in that city was levied at the rate of 20 mills "in addition to the 1% territorial general property tax." By resolution of October 10, 1949, this was amended to provide for a levy of 20 mills under Ordinance No. 324 and the tax under the territorial property tax law was set at the rate of zero mills. On October 21, 1949, the Council of the City of Juneau levied a tax of 20 mills. In the same year the Board of Directors of Juneau Independent School District made a school tax levy of 10 mills. "Of this amount 7 mills was used for school purposes within the school district and the remaining 3 mills was turned over to the Territory of Alaska pursuant to the provisions of the Alaska property tax Act." In 1949, the City of Douglas levied taxes on all real and personal property within the city at a rate of 15 mills. No other taxes were levied for that year.

In addition, the various local ordinances and resolutions varied considerably in respect to the assessment and collection of taxes. Thus the Juneau Independent School District taxes became delinquent after November 15, but if half were paid on that day the other half did not become delinquent until after May 15 of the following year. A similar provision existed in respect to the taxes of Douglas Independent School District, and the Fairbanks Independent School District. In the City of Juneau if taxes were paid by June 15, a discount of 2% was allowed. The same was true in the City of Douglas and in the Douglas Independent School District. Some of these taxing areas' penalties and interest were at the rates of 10% and 6% and in others they were higher. Some of the ordinances provided that the owner of personal property assessed should be personally liable for the taxes, and in some no such provision was made.

It is the view of the appellants that aside from the Juneau Independent School District, which as above mentioned, retained the proceeds of 7 mills and turned 3 mills over to the Territory, these various municipalities and districts simply ignored the mandate of Chapter 10 and wholly neglected to levy or collect the 1% tax purportedly provided by § 3. They point to the express recital in the Fairbanks resolution that the tax under the Territory general property tax law was set at the rate of zero mills. Attention is called to the fact that Chapter 10 provides no machinery by which the levy and collection ·of the 1% tax by the cities and districts could be enforced or compelled. The argument is that the territorial legislature by its failure in this respect has permitted a practical discrimination and a denial of the equal protection of law to these appellants and to owners of property outside cities and districts who thus in fact are required to carry the whole burden of tax support for the territorial government so far as the general property tax is concerned.

We note that in the year 1949, each of these school districts and municipalities levied, assessed and collected a tax of at least ten mills and the inquiry is whether such a levy and collection does not satisfy the requirement of Chapter 10 that there shall be levied and collected a tax of one percentum of the true and full value of the property. It is suggested that where a tax of more than ten mills was collected, the first ten mills of the tax assessed would be deemed levied and collected under Chapter 10 and the balance constitute the "additional tax" authorized by § 4 of the statute.

This in fact was the view presented by these same appellants when they were here before. Mullaney v. Hess, 9 Cir., 189 F.2d 417. At that time it will be recalled they were attempting to sustain the injunction which they had procured against the collection of the taxes here involved. Our decision was that in view of the right of the present appellants to pay their taxes under protest and to bring an action at law to secure a refund, their adequate remedy at law prevented the maintenance of a suit in equity to procure an injunction. Basing their argument upon the view which they then took to the effect that the first ten mills in each city or district was an attempted levy under Chapter 10, the present appellants then argued that since they were confronted with an attempt to collect taxes in numerous taxing units, the equitable remedy by way of injunction should be permitted in order to avoid a multiplicity of suits. In rejecting this argument this court then said, 189 F.2d at page 421: "The answer to this contention is that none of the municipalities or school districts have attempted to assess or collect a tax under the Act except in one instance already mentioned in which case the tax (on boats) was voluntarily paid."

■ Appellants say that this court has thus made an adjudication that the municipalities and school districts mentioned did not in fact assess or collect any tax under this Act. Apart from any such finding or determination, it might well be that in view of the presumption that official duty has been regularly performed, we should hold that these municipal and district levies to the extent of the first ten mills thereof were in compliance with that portion of § 4 which requires the tax levy under the provision of § 3 to be assessed and collected by the municipality or district.

But assuming the facts to be as recited in the language just quoted from Mullaney v. Hess, supra, this means no more than that certain city and district officials failed to take due notice of the requirements of Chapter 10. What they omitted to do was to state expressly that the first ten mills of their levy was made in compliance with Chapter 10, and represented the 1% tax called for by § 4 thereof.[6]

6. The school tax levy of the Juneau Independent School District, referred to above, would appear to contain an appropriate express reference to Chapter

■■ It is to be noted that we are dealing here with the year 1949 only, which was the first year of the operation of the new law. It was a time when public officials in communities as scattered as those here referred to might neglect properly to label their levies, and this through mere inadvertence, inattention or misunderstanding. Such failure to conform is not generally deemed to be such a violation of a tax uniformity requirement as to render the collection of all taxes under the law invalid. "Nor does the equal protection clause prohibit inequality in taxation which results from mere mistake or error in judgment of tax officials * * * or which is not shown to be the result of intentional or systematic undervaluation of some but not all of the taxed property in a single class." Charleston Federal Sav. & Loan Ass'n v. Alderson, 324 U.S. 182, 190, 191, 65 S.Ct. 624, 630, 89 L.Ed. 857.

We find here no evidence of any deliberate attempt by the Territory to provide that the General Property Tax should not be collected from city or district property. But even if there had been an express provision to that effect, it could not be held to be outside the permissible range of legislative classification for tax purposes, if the whole scheme, in practical effect, imposes substantially the same tax burden on all property, wherever situated. In Alaska Steamship Co. v. Mullaney, 9 Cir., 180 F.2d 805, 818, we held that this uniformity provision of the Or-ganic Act established standards which were substantially the same as the equal protection limitations of the Fourteenth Amendment as applied to tax legislation by a State. We noted there that these limitations and restrictions do not prohibit reasonable classification, and we quoted from Madden v. Commonwealth of Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, the statement: "In taxation, even more than in other fields, legislatures possess the greatest freedom in classification." Cf. Walters v. City of St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505.

■ We think the territorial legislature could justly regard the maintenance of adequate government and governmental facilities, including schools, in these municipalities and districts to be as much a public purpose and as entitled to tax support as the maintenance of any other territorial facility. A classification which would provide in substance that all property should pay taxes at the same rate but that taxes collected from property within municipalities and districts should be used for local public purposes, while those collected from property outside such cities and districts should fall into the general treasury of the territory, would not be an unreasonable classification within the rule of Madden v. Kentucky, supra.[7]

We are concerned, not with names or labels applied to taxes, nor with diversity of collecting agencies, but rather

10 in providing that the three mills not used for school purposes should be "turned over to the Territory of Alaska pursuant to the provisions of the Alaska Property Tax Act."

7. "Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Compare the tax on shares of stock upheld in Travellers' Ins. Co. v. State of Connecticut, 185 U.S. 364, 368, 22 S.Ct. 673, 675, 46 L.Ed. 949, where "The resident is not called upon to pay any of the expenses of the state, but only to bear his proportional share of those of the municipality. The non-resident is called upon to pay no share of the expenses of the municipality, but only to contribute to the support of the state."

with the substantial impact and bearing upon the property and owners affected. In Charleston Ass'n v. Alderson, supra, the Supreme Court noted "the well established rule that the constitutional prohibition applies only to taxation which in fact bears unequally on persons or property of the same class and that mere differences in modes of assessment do not deny equal protection unless they are shown to produce such inequality."

▆▆▆ Some emphasis is placed upon the provisions of the local ordinances granting delay in payment of half of the tax imposed when the first half is paid on time and permitting a discount of 2% if the whole tax is paid in advance. We are not required by the issues tendered here to express an opinion as to whether a discount of such character could be permitted in respect to the 1% property tax called for by §§ 3 and 4 of the statute. If and when such an issue arises we could then deal with the question whether Chapter 10 must be construed as not permitting such a discount in respect to the 1% tax. As for the variation in time of required payment of taxes and in the interest and penalties charged on delinquent taxes as between the various cities and districts, we deem none of them of sufficient consequence to affect the validity of Chapter 10.

The appellants further seek recovery of their protested taxes because of alleged defects in the statute's provisions for the taxation and assessment of mining claims and claimed irregularities in the assessments thereunder. Here the two appellants approach from different angles. Hess lists the statute's special provisions for assessing mines as another respect in which it lacks uniformity. The Mining Company on the other hand objected on the ground that its mining claims were not assessed in compliance with the law. Both assert that this portion of the statute does not comply with the provisions of the Organic Act relating to the assessment of such claims.

Section 9 of the Organic Act (supra, note 1) makes special exception as to mining claims as follows: " * * * except that unpatented mining claims and non-producing patented mining claims, which are also unimproved, may be valued at the price paid the United States therefor, or at a flat rate fixed by the legislature, but if the surface ground is used for other than mining purposes, and has a separate and independent value for such other purposes, or if there are improvements or machinery or other property thereon of such a character as to be deemed a part of the realty, then the same shall be taxed according to the true and full value thereof." 48 U.S.C.A. § 78.

Section 3 of Chapter 10 provides: "For the purposes of this section the assessed value of unimproved, unpatented mining claims which are not producing, and non-producing patented mining claims upon which the improvements originally required for patent have become useless through deterioration, removal or otherwise, is hereby fixed at $500.00 per each 20 acres or fraction of each such claim, except that if the surface ground of any such claim is used for other than mining purposes and has a separate and independent value for such other purposes, the valuation as pertains to such non-mining uses and of improvements incidental to such uses shall be according to the full and true value thereof."

▆▆▆ It should be noted that if this section does conform to the authority thus granted in the portion of § 9 of the Organic Act quoted above, then appellants may not complain of the fact that it makes a discrimination between mining claims and other types of property. This is something which Congress has authorized. No equal protection clause such as that directed by the Fourteenth Amendment to the States restricts the power of Congress. Helvering v. Lerner Stores Co., 314 U.S. 463, 468, 62 S.Ct. 341, 86 L.Ed. 343; Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279. As the authorized discrimination here cannot be said to be so extreme, or so devoid of reasonable basis as to be wanting in due pro-

cess, we find no constitutional question present. This special treatment of mines has no bearing on the uniformity requirement of § 9, as it is an express exception thereto.

Appellants say the provisions of § 3, just quoted, are not in compliance with the Organic Act. They say it does not fix a "flat rate"; that "$500.00 per each 20 acres or fraction of each such claim," is not at a flat rate. We disagree. Among the definitions of "flat" in Funk & Wagnalls New Standard Dictionary is the following: "Not varying with changing conditions; uniform; as a flat rate." We think that what Congress here authorized was a system of valuation not varying according to market or other values, but based upon a uniform system which disregarded such varying values. The fact that some claims are much smaller than others, and some embrace much less than 20 acres does not make this any less a flat rate. In the field of water distribution by a local utility, flat rates are sometimes charged, as distinguished from metered rates. Such a rate, calculated and charged to householders on the basis of so much per room, is a "flat rate". And so is the one fixed here. That some claims are less than 20 acres is as unimportant as the fact that in the case of the water rate mentioned, not all rooms will be of equal size.

Appellants call attention to the fact that the quoted provision of § 3 falls short of the full authorization of the Organic Act. The latter permits the flat rate for all unpatented mining claims. § 3 extends it only to those "which are not producing". Appellants fail to show how they could possibly suffer in consequence of this legislative renunciation which was of course something for the legislature to decide.[8] Appellants' arguments based on the assessment of mining claims are without merit.

Finally we are told we must strike down the statute because by an amendment to § 3 it was provided that the owner of a boat or vessel might elect to pay a stated sum per ton of the vessel's registered tonnage, in lieu of payment of tax on assessed values determined as in the case of other property. Intervening appellant cannot complain of this provision for it made this election and paid the tonnage tax. The other appellant, who has no boats, has failed to show that this provision resulted in any discrimination as against him, or furnished any boat owner any advantage. In any event, the placing of such property in a class by itself is not forbidden to the legislature by any requirement of uniformity.

The judgment is affirmed.

8. Appellant Mining Company was assessed upon its Red Cliff claim containing 0.603 acres, upon 16 patented claims in one group, and upon ten patented claims in another group. Each of these 27 claims was assessed at $500.

The briefs contain considerable discussion of how a full size lode claim, containing 20.611 acres, must be assessed under § 3. Without explaining why that should be so, appellants say to apply a value of $1000 would not make this a "flat rate". Appellee suggests, as did the trial court, that the 0.611 acres could be disregarded, under the rule de minimis. It is not shown that either appellant presents a case of that character, or that any single lode claim has been assessed at more than $500.